## JOB T. MOORE,

### *vs.*

## OLIVER DAWSON.

### *Sussex, Dec.* 16, 1921.

Whether a conveyance accompanied by an agreement to reconvey on payment of a given sum is a mortgage or a sale with contract to repurchase, depends on the intention of the parties, as shown on the face of the writings, or by extrinsic evidence.

A test for ascertaining whether the intention of the parties to a conveyance, accompanied by an agreement to reconvey on payment of a given sum, was that the instrument should constitute a mortgage or a sale with a contract to repurchase, is whether there was a debt or liability to grantee to secure which grantor made the conveyance.

A conveyance with an agreement, under penalty, to reconvey on payment of a given sum, with interest, *held* a mortgage securing a loan, where grantor continued to occupy the premises rent free and pay the taxes for fifteen years until he died.

In a suit for reconveyance of a house and lot conveyed as security for the payment of a debt, evidence *held* insufficient to show that such debt should be reduced to the extent of a note executed by a third party to mortgagee which mortgagor paid.

Though heirs at law may redeem their ancestor's land from the lien of a mortgage, an heir refusing to join in redeeming it cannot be compelled to contribute her portion of the debt, nor can the mortgagee be compelled to accept anything less than the whole amount due and relieve the land *pro tanto*, but any of the heirs supplying the funds necessary to make up the deficiency are entitled to a lien on the share of such delinquent to the extent of such contribution.

STATEMENT OF THE CASE. By bill of complaint Job T. Moore, the complainant, sought to have reconveyed to him a lot of land and dwelling house, situate in the town of Seaford, Delaware, which he had conveyed to Oliver Dawson, the defendant, on September 16, 1904. The bill alleged that these premises were conveyed to Dawson for the purpose of enabling him to borrow money to pay a joint indebtedness of the complainant and defendant, and that at the time of the conveyance to Dawson the following paper was signed by Dawson and delivered to Moore:

"Know all men by these presents that I Oliver Dawson of the town of Seaford, Sussex county and the state of Delaware, do bind myself, my heirs executors administrators under the penalty of fifty dollars to deed to Capt. J. T. Moore, or whoever he may mention the house and lot where he the said Capt. J. T. Moore now lives when the said Moore pays to the said Dawson the amount of four hundred and fifty dollars and interest is paid to the said Dawson.

"Witness my hand and seal this 17th day of September, A. D. 1904.
"OLIVER DAWSON. [Seal.]"

The bill also alleged that at divers times Moore was ready and willing to perform his part of the agreement by paying to Dawson the said sum with interest, and that on June 14, 1919, Moore tendered to Dawson a certified check for $610.00 and demanded "a good and sufficient deed for said premises, clear and discharged of all liens and incumbrances as per contract above set forth, and he hoped that said respondent would have specifically performed

his part of said contract as in justice and equity he ought to do."
It is also alleged that the defendant, however, without excuse,
refused to perform his part of said agreement.

In addition to prayers for injunction, subpœna and general
relief, the bill prays, as follows:

"That said respondent may be decreed specifically to perform the said
agreement entered into with your orator as aforesaid and to make a good and
marketable title to the said premises, your orator being ready and willing and
hereby offering specifically to perform the said agreement on his part, upon
said respondent making out a good and marketable title clear of incumbrance
to the aforesaid estate and premises, and executing a proper conveyance thereof
to your orator pursuant to the terms of the said agreement upon payment to
the said respondent the purchase price, or sum of six hundred and ten dollars."

The bill was filed September 9, 1919, and on March 6, 1920,
the defendant filed an answer admitting the conveyance, putting
the complainant to proof as to the purpose thereof, and admitting
the signing of the agreement above set forth. The answer denies
that the amount tendered by Moore on June 14, 1919, was the
correct amount due, and avers that he was not obliged to reconvey
the property to Moore at that time upon payment of that amount.

On October 27, 1920, Thomas Moore, Henry Moore, Verda
Brown and Swaine W. Moore, children and only heirs at law of
Job T. Moore, except Amanda Dawson, wife of the defendant,
owing to the death of the complainant, Job T. Moore, filed a bill
in the nature of a bill of revivor, praying for such decree in the
cause as to the Chancellor should seem meet and proper. Swaine
W. Moore, administrator of Job T. Moore, also filed a similar bill
with similar prayer. Amanda Dawson was thereafter made a
party defendant, and has appeared by her solicitor and filed an
answer, in which the allegations of the bill are neither admitted
nor denied, and submitting herself to such orders and decrees as
to the Chancellor shall seem proper.

The cause was heard on bill, answer, testimony of witness
and exhibits.

*John M. Richardson* and *James M. Tunnel*, for the complainants.

*Henry R. Isaacs*, for the defendants.

THE CHANCELLOR.      The first question that presents itself

is as to the nature of the transaction which took place between Job T. Moore and Oliver Dawson. Are the conveyance from Moore to Dawson and the cotemporaneous agreement by Dawson to reconvey to Moore, to be regarded as constituting in equity a mortgage, or as a sale and distinct contract of repurchase? On this question, the parties do not take any definite position; that is, neither party has chosen to champion either one view or the other.

My judgment is that the facts as set forth in the pleadings and supplemented by the evidence adduced at the hearing disclose the transaction to have been in substance, a loan of $450.00 with interest by Dawson to Moore on the security of the premises which Moore and wife conveyed to Dawson.

How such transactions as are here involved are to be regarded, as stated by Mr. Pomeroy in his work on *Equity Jurisprudence,* (*4th Ed.*) § 195, "finally turns, in all cases, upon the real intention of the parties as shown upon the face of the writings, or as disclosed by extrinsic evidence."

To the same effect is the language of the Court of Errors and Appeals of this state in *Walker's Adm'x. v. Farmers' Bank,* 8 *Houst.* 258, 280, 14 *Atl.* 819, 822, where it is stated:

"It may therefore be regarded as an established doctrine that a court of equity will look beyond the terms of the instrument to the real transaction, and will give effect to the actual contract of the parties, and will treat a deed absolute in form as a mortgage, or a conveyance in trust for the payment of debts, or otherwise, in accordance with the object of the parties in executing and receiving the same, and also that, as the equity upon which the court acts in such cases arises from the real character of the transaction, any evidence, written or oral, tending to show this is admissible."

The presence, in Dawson's contract to reconvey, of a clause penalizing him in the sum of fifty dollars would, standing alone, seem to indicate that the parties regarded the transaction as one of a sale and a contract to resell rather than as one of a transfer as security for a loan.

I believe it to be well settled that a general criterion which supplies a sufficient test for the ascertainment of the intention of the parties is this, viz.: Is there a debt or liability recognized by the parties as continuing in favor of the grantee to secure which the grantor made the conveyance? 3 *Pomeroy on Equity Jurisprudence,* (*4th Ed.*) § 1195.

Notwithstanding the existence of the penal clause in the contract, I am nevertheless of the opinion that the arrangement was one of a loan from Dawson to Moore secured by the conveyance of the land. I am impelled to this view by the fact that Moore was to pay interest on the sum of four hundred and fifty dollars, and by the further circumstances, proved at the hearing and uncontradicted, that Moore continued to occupy the premises rent free from the date of the agreement to the date of his death in 1919, a period of fifteen years, and during that time paid the taxes on the property. These facts are inconsistent with the idea of absolute ownership in Dawson, and are controlling as indicating that the parties themselves, ever since the transaction arose, regarded Moore as the owner for all purposes except insofar as the land was to be regarded as a security in Dawson's hands for his debt.

I, therefore, hold that Dawson, though his deed conveyed to him an absolute fee-simple title, nevertheless is to be regarded in equity as simply a mortgagee. Accordingly the rights and liabilities of the parties are to be determined on the basis of the relationship of mortgagor and mortgagee existing between Job T. Moore and Oliver Dawson. This being true, the relief to be granted is to be governed as though the bill were a bill to redeem land from the lien of a mortage.

The bill being so regarded, the first fact to ascertain is whether or not there is anything due to Dawson, the mortgagee, and, if so, how much. There is no necessity for me to order an accounting for the purpose of ascertaining this fact. Both sides agree that something is due, and the only really contested point in the cause is as to the amount. I can readily determine this question from the evidence before me. The controversy over the amount due has to do solely with whether or not Dawson's claim is to be debited with an item of one hundred and twenty-five dollars, the complainants contending that the claim should be so debited and Dawson contending to the contrary.

At the hearing Swaine W. Moore, one of the complainants, undertook to prove that the debt to Dawson is to be reduced to the extent of a certain note for one hundred and twenty-five dollars made by one Leonard Moore to the defendant Oliver Dawson. The witness insisted that this note evidenced a debt owed by Daw-

son to Leonard Moore, whose name was signed to the note, for the purpose of raising funds which he, Leonard Moore, advanced to Dawson; and that Job T. Moore paid off the note, with interest, and, thus paying a debt of Dawson to Leonard Moore, became entitled to a credit on the four hundred and fifty dollars which he, Job T. Moore, owed Dawson. In testifying to this arrangement the witness did not speak of his own knowledge, but based his testimony solely on statements which he had heard his father, Job T. Moore, make.

As opposed to this hearsay evidence of the transaction, Oliver Dawson testified in the cause and denied absolutely that the note and its payment had such significance as was attributed to it by the witness Swaine W. Moore. On the contrary Dawson's positive testimony is, that the note evidenced a loan which he had made to Leonard Moore, the maker.

In view of this state of the evidence, I must conclude that the note and its payment is not in any wise to be allowed as a credit against the four hundred and fifty dollars and interest due from Job T. Moore to Oliver Dawson.

Though I admitted the testimony of Oliver Dawson to the effect that nothing had ever been paid on account of his claim against Moore notwithstanding the objection of the solicitors for the complainants, yet, in view of the fact that the above-mentioned testimony of Swaine W. Moore is the only evidence tending to show a credit of any kind, and in view of the fact that I regard the testimony of Swaine W. Moore as completely overcome by the positive and direct evidence of the witness Dawson, it is unnecessary for me to give any weight at all to that portion of the testimony of Dawson which was so objected to, and I accordingly dismiss it from consideration.

I find as a fact that Dawson is entitled to receive the full sum of four hundred and fifty dollars, together with interest thereon from September 17, 1904, before he is called upon to reconvey the premises.

The original bill was filed by Job T. Moore, who died during the pendency of the cause. Four of his heirs at law have been made parties complainant in his stead, and are now seeking the same relief as their ancestor sought. That heirs at law may re-

deem the lands of their ancestor from the lien of a mortgage cannot be seriously questioned.

> "Any person who holds a legal estate in the mortgaged premises, or in any part thereof, derived through, under, or in privity with the mortgagor, * * * may also in like manner redeem from the prior mortgagee. No such redemption, however, is possible unless the mortgage debt is due and payable, nor unless the mortgage is wholly redeemed by payment of the entire amount of the mortgage debt. The debt being a unit, no party interested in the whole premises, or in any portion of them, can compel the mortgagee to accept a part of the debt, and to relieve the property *pro tanto* from the lien. Furthermore, if the person redeeming has only partial interest in the premises, and there are other partial owners also interested in having the lien of the mortgage removed from their estates—such as co-owners, life tenants, reversioners, remaindermen and the like—he cannot compel them in the first instance to advance their proportionate shares for the purpose of paying off the debt; he must himself redeem the whole mortgage, and his only equity against them consists in his right to enforce the mortgage upon their estates as a security for obtaining a subsequent contribution." 3 *Pomeroy's Equity Jurisprudemce*, (*4th Ed.*) § 1220.

One of the heirs at law of Job T. Moore is Amanda Dawson, wife of the defendant Oliver Dawson. She, together with the four complainants, are the only heirs at law of Job T. Moore, each being entitled to an equal undivided one-fifth part of his estate. Mrs. Dawson refused to become a party complainant and she was accordingly made a party defendant. I assume, therefore, that her attitude is hostile to the complainants. Whether she desires to join in redeeming the land from the lien of her husband's mortgage does not yet appear. She cannot be compelled to do so, and contribute her portion of the debt due to Dawson, nor can Dawson be compelled to accept anything less than the whole amount due and relieve the land *pro tanto*.

The decree must be so framed as to provide for the contingency of a refusal by Mrs. Dawson, or by any other heir, to contribute towards the payment of the amount found due. Should any of the heirs entitled refuse to make contribution, then those who supply the funds are entitled to a lien on the share of such deliquent to the extent of the contribution made; and in case there is a refusal on the part of all the heirs to pay Dawson the sum due, then the bill must be dismissed.

Let a decree be entered declaring the deed, by which Dawson

holds the land in question, to be a mortgage to secure the payment to him by Moore of four hundred and fifty dollars and interest thereon from September 17, 1904; that upon payment into the registry of this court, as hereinafter provided, of said sum and interest, he shall by proper instrument, or instruments, convey said premises in equal undivided parts to the complainants and to Amanda Dawson, heirs at law of Job T. Moore, their heirs and assigns, free and clear of all incumbrances done by him, or any person claiming by, from, or under him; that said sum and interest shall be paid by said complainants and Amanda Dawson, all or any of them, into the registry of this court for the use of said Oliver Dawson on or before June 15, 1922, and that, in default thereof, the bill shall from thenceforth stand dismissed; that in case any of said complainants pays the share or portion of said sum and interest chargeable to any other of the heirs at law of Job T. Moore, deceased (which share or portion is hereby found to be one-fifth of said sum and interest for each of said complainants and for Amanda Dawson), because of the refusal of the person whose share or portion is so paid to pay the same, the person so paying such share or portion shall be entitled to a further decree of this court for a lien on the interest in the said lands of Job T. Moore, deceased, of that one or more of said heirs at law whose portion of the sum due was so paid to the extent of the payment, or payments, so made. The right to make such other and further decree as the Chancellor may deem necessary to ascertain and establish any such lien, or liens, as aforesaid on the interest of any of said heirs at law of Job T. Moore, deceased, is reserved by the court.

Because of the fact that Oliver Dawson was never tendered the full sum due him from Job T. Moore, costs should be taxed against the complainants.