. GUISEPPE MAISANO, also known as Joseph Mason,

*vs.*

FREDERICK SAUERWINE and CAROLINE SAUERWINE.

*New Castle, July 25, 1934.*

*Lilburne Chandler,* for complainant.

*Francis A. Reardon,* for defendants.

THE CHANCELLOR: The case of *Richards v. Jones, et al.,* 16 *Del. Ch.* 227, 142 *A.* 832, defines the legal principles applicable to this case. That the grantor, when he executed the deed, was the complainant's lessee under a lease which imposed continuing rental obligations is clear and that the lessee defaulted in his rental obligations is conclusively shown by the two judgments before the justice of the peace.

The only serious question is whether or not the deed

was executed by the defendant Frederick Sauerwine to his mother, the other defendant, without consideration. The joint answer of the defendants does not claim that the deed was intended to be an absolute conveyance. The answer avers the deed to have been made by the son to the mother as security for a loan of nine hundred dollars by the latter to the former. While the answer avers the loan to have been nine hundred dollars, the defendants, departing from their answer, testified that it was for six hundred dollars. Their sworn testimony conflicts with their sworn answer upon this highly important fact in their case. Passing for a moment the controversy which the defendants thus have with themselves over the amount of the alleged loan, it is obvious that if the transaction was in fact one of loan, the deed in contemplation of equity is a mortgage. *Frazer v. Couthy Land Co.*, 17 *Del. Ch.* 68, 149 *A.* 428; *Moore v. Dawson,* 13 *Del. Ch.* 98, 115 *A.* 589; *Walker's Adm'x. v. Farmers' Bank,* 8 *Houst.* 258, 10 *A.* 94, 14 *A.* 819; and the complainant would be entitled to subject the grantor's equity in the property to the payment of his claim in subordination, of course, to the prior right of the grantee to be repaid the sum loaned. On the defendants' own admissions, then, the complainant is entitled at the very least to look to the grantor's equity in the property for satisfaction.

But under the evidence I am forced to the conclusion that the deed was not given as security for a loan. In the first place the conflict between the defendants' answer that the loan was for nine hundred dollars and their very positive testimony that it was for six hundred dollars is a circumstance that causes queries to be raised as to the degree of reliability to be placed in the statements of the defendants. In the next place, where an absolute deed is given when only a mortgage is in fact intended, the parties hide their real transaction behind a false appearance. They may of course do that if they choose. But the inquiry

arises—why did they do it? There must have been some reason for it. In this instance a reason appears in the fact that the grantor was loaded with the continuing obligations for rent under a lease from the complainant which was proving burdensome. Then, too, the consideration was only a nominal one of five dollars, whereas the actual money averred to have been loaned was nine hundred dollars. That of course was permissible. But why again, I ask, was there the creation of an appearance of a transaction which was still farther removed from the true facts? Believing as I do, for the reason about to be stated, that there was no loan, the grantor evidently entertained the notion which appears to be frequently accepted by the uninformed, that all he had to do to evade his creditors was to deed his property to another. Entertaining that moderately popular fallacy, he executed the deed without receiving therefor any consideration. The deed is such in point of form as harmonizes with that view of the matter and the facts, instead of falsifying, confirm the appearances of the form.

Did the grantee loan six hundred dollars to her son, the grantor, as claimed by them in their testimony? If the loan was made, the adverse implications flowing from the indirection in the method of securing the repayment would be destroyed. That the grantee had money in an amount sufficient to lend six hundred dollars to her son, if she desired to do so, is clearly shown. She had about twenty-five hundred dollars in a savings account with the Security Trust Company in Wilmington. Her son testified that he believed his mother drew the amount necessary for the loan from that account, and she herself was positive in her testimony that she did draw the sum from the account. Thus the parties to the deed by their testimony supplied in the most positive way a means of checking and verifying the truth of their statements. The trust company's records, however, completely refute their statements. No withdrawal of six hundred dollars either in a lump sum, or in

separate amounts aggregating that sum, was made by the grantee at or about the time of the deed's date. When the defendants thus point to a place where an irrefutable record might be found verifying their account of the money's source, and that record when produced absolutely refutes them, it would be straining at credulity to accept their statements that the loan was made.

An appropriate decree will be entered in accordance with the foregoing.